# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

STEPHEN M. GARRISON,

                Petitioner,           :    Case No. 2:18-cv-1153

     - vs -                          Chief Judge Edmund A. Sargus, Jr.
                                           Magistrate Judge Michael R. Merz

DAVID GRAY, Warden,
  Belmont Correctional Institution,

                                :

                Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Stephen M. Garrison to obtain relief from his conviction for aggravated burglary in the Muskingum County Court of Common Pleas. The case is before the Court for decision on the merits on the Petition (ECF No. 3), the State Court Record (ECF No. 7), the Return of Writ (ECF No. 8), Petitioner's Traverse (ECF No. 11), the Warden's response to the Traverse (ECF No. 12), the Petitioner's Supplemental Response (ECF No. 17), and the Warden's reply to the Supplement (ECF No. 18).

The Magistrate Judge reference in this case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 19).

**Litigation History**

Garrison was indicted by the Muskingum County, Ohio, Grand Jury on January 12, 2017, on one count of domestic violence and one count of aggravated burglary (Indictment, State Court Record, ECF No. 7, Ex. 1, PageID 90-91). A trial jury found him not guilty of domestic violence but guilty on the burglary count and he was sentenced to eleven years imprisonment. Garrison appealed, but the conviction and sentence were affirmed. *State v. Garrison*, 5th Dist. Muskingum No. CT2017-0034, 2018-Ohio-1048 (. Mar. 22, 2018); appellate jurisdiction declined, 153 Ohio St.3d 1442 (2018). On September 26, 2018, Garrison filed his Petition in this Court[1], pleading the following grounds for relief:

> **Ground One:** The Petitioner's Sixth Amendment to the United States Constitution (along with analogous State constitutional guarantees) rights were violated when the criminal felony state trial court admitted hearsay testimony which prevented Petitioner from the constitutional right to confront witnesses in violation of the Confrontation Clause.
>
> **Supporting Facts:** The trial court admitted testimony that is considered hearsay which violates Garrison's Sixth Amendment right to confront witnesses against him and or cross-examine them.
>
> Specifically, Deputy Hamilton and Deputy Williams testified at trial as to statements that were supposedly made by Nikki Dickinson and Brian Hohnwald.
>
> Garrison argued that the admission of these statements was in direct violation of the primary purpose of the confrontation clause which did not ensure Garrison's right of cross-examination, this argument was raised on direct appeal and to the state's highest court.
>
> This right is a procedural guarantee that ensures that the reliability of testimony be tested by cross-examination. When Garrison was unable to cross-examine the statements the deputies introduced it

---

[1] September 26, 2018, is the date Garrison states the Petition was placed in the prison mail system (Petition, ECF No. 3, PageID 81). Because he is incarcerated, that is deemed to be the date of filing. *Houston v. Lack,* 487 U.S. 266 (1988); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).

fundamentally violated Garrison's Sixth Amendment to the U.S. Constitution. When the trier-of-fact, in this case the jury, was not afforded an opportunity to evaluate the truth of prior statements, denying them the accuracy of truth determining process in criminal trials it violated the Confrontation Clause contained in the Sixth Amendment. The Confrontation privilege of the Sixth Amendment provides ample opportunity for both the defendant to cross[-]examine witnesses and for the jury to observe witnesses. It is commonly held that the defendant to cross-examine witnesses is an indispensable ingredient, while the right for the jury to observe witnesses is an incidental advantage.

Garrison's Sixth Amendment's right to confront witnesses against him is a fundamental right essential to a fair trial and is made obligatory on states by the due process clause of Fourteenth Amendment; confrontation clause of Sixth Amendment is thus enforceable against states under Fourteenth Amendment according to same standards which protect right to confrontation against federal encroachment.

Garrison asserts that his Sixth Amendment right to confront witnesses against him was violated by the admission into evidence of statements made by Nikki Dickinson and Brian Hohnwald through the testimony of Deputies Hamilton and Williams.

On direct appeal, the Fifth Appellate District reviewed this issue and incorrectly determined that as Garrison's trial attorney did not raise this issue in the form of an objection that it was somehow not preserved for review on the merits, but was reviewed under the guise of plain error. Yet, in this case, Petitioner's counsel did object asserting a 'Confrontation Clause' objection.

The Appellate Court held that the objection as raised was untimely, which presents a prima facie example of ineffective assistance of counsel, which is a violation of yet another Constitutional Amendment to effective counsel in violation of Petitioner's Sixth Amendment guarantees.

The Appellate Court did review the error under the standard of review for plain error. The Ohio Supreme Court has clarified this standard and stated in summary that the error must be obvious, that it affected substantial rights and that it must have affected the outcome of the proceedings.

The testimony of any detective or police officer holds substantial weight with any jury. Thus, when the deputies testified and Garrison

could not cross examine those statements, it established a set of facts that are wildly inaccurate and violates Garrison's Sixth and Fourteenth Constitutional Amendments (along with violations of Section 10, Article I of the Ohio Constitution).

**Ground Two:** The Petitioner was deprived of the effective assistance of counsel contrary to the State and Federal Constitutions, guaranteed by the Sixth Amendment and Article 10, Section 1 of the Ohio Constitution.

**Supporting Facts:** The Sixth Amendment to the United States Constitution, made applicable to the States by and through the Fourteenth Amendment to the United States Constitution and guaranteed by Article 10, Section I of the Ohio Constitution provides that a criminal defendant has the right to effective assistance of counsel.

Petitioner's trial counsel was ineffective in his representation at Garrison's trial. There are multiple instances where counsel failed to perform his duties. Petitioner recognizes that the long held [sic] interpretations of *Strickland v. Washington* are arduous, yet, Petitioners counsel fell below an objective standard of reasonable representation and those errors resulted in the fact that the proceedings would have been different.

From Ground One, it is apparent that Garrison's counsel failed to raise an objection on the Confrontation Clause at the exact moment it happened. Counsel did assert this objection later, which fundamentally changed the outcome of the trial because if Garrison prevailed on that objection it would have changed the trial.

Counsel did not file a motion in limine seeking to limit statements of witnesses as well as prior bad act evidence known to counsel.

Counsel was ineffective in failed to file a motion to suppress statements Garrison made to law enforcement officials.

Counsel never attempted to focus the jury pool's attention on the State's burden of proof and waive[d] an opening statement where counsel could have focused the jury on the State's burden of proof.

Counsel failed to use peremptory challenges to excuse jurors who may have been biased.

Counsel failed to object to out of court statements on the basis of violation of the Confrontation Clause (which is contained in Ground One of this Petition).

Counsel on cross continued to ask a series of question to Deputy Hamilton which allowed him to continue to testify as it relates to this out of court statements.

Counsel failed to object when Deputy Hamilton spoke about the element of the offense, namely "fleeing[.]"

Counsel was ineffective when counsel opened the door to admission of the statements of Brian Hohnwald when counsel asked Deputy Williams if anyone he spoke to told him they witnessed a physical interaction between Garrison and Dickinson (the alleged victim).

Counsel was ineffective because counsel should have objected to Williams' testimony (when Hohnwald told Williams that Garrison kicked the door in, when Williams' [sic] never saw this event take place).

Counsel should have continued to object to the prosecutor's characterization of the evidence regarding "fleeing" and Garrison's intent to "confront" Wilt at the residence.

Counsel erred in failing to object to the court instructing the jury they could consider fleeing as evidence of guilt.

Counsel was ineffective in failing to request lesser-included offense instruction.

Over and over again Garrison's counsel failed to perform her duties in representing her client. It is clear from the record that there isn't just one instance of ineffective assistance but the calumniation [sic] of numerous instances of ineffectiveness. This fundamentally changed the outcome of the trial.

**Ground Three:**   The Petitioner's guilty verdict for aggravated burglary does not meet the sufficiency of the evidence and is contrary to law.

**Supporting Facts:**   Petitioner raised this issue on appeal, stating that his guilty verdict for aggravated burglary is against the manifest weight of the evidence and is contrary to law. Appellate Counsel indicated that the jury clearly lost their way and in doing so created

a manifest miscarriage of justice that should reverse Petitioner's conviction and a new trial ordered.

The undersigned agrees that this Court would lack jurisdiction to consider this claim challenging the weight of the evidence because it raises a state-law issue that does not implicate federal constitutional concerns. The contents of Petitioner's ground were raised on direct appeal, in that they were argued as sufficiency-of-evidence even though they were characterized in summary to state "manifest weight of the evidence[.]" Appellate Counsel did state that the resulting conviction is a manifest miscarriage of justice, which would waive any and all procedural defaults that may be asserted by the Respondent.

While there is a difference between "manifest weight of the evidence" and sufficiency-of-the evidence, appellate counsel on appeal incorporate a sufficiency of the evidence argument. Moreover, this ground includes an issue of due process, which is subject to review on the merits. Petitioner did not default the sufficiency-of-evidence claim that was raised to and considered by the Ohio Court of Appeals even though as he referred to the issue in his memorandum in support of jurisdiction on further appeal to the Ohio Supreme Court.

Petitioner was convicted of aggravated burglary in violation of R.C. 2911.1 1 (A)(l):

> "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]"

Petitioner asserts and argued that the evidence does not demonstrate he entered the apartment with purpose to commit a criminal offense, and further does not demonstrate he inflicted physical harm, or attempted or threatened to inflict physical harm.

Petitioner becaue [sic] the jury found him not guilty of domestic violence, they rejected the testimony that he struck Dickinson with

the box of marbles, and therefore the finding he inflicted, or attempted or threatened to inflict, physical harm is against the manifest weight of the evidence or does not meet the sufficiency of the evidence standard, either legal or factual sufficiency.

Specifically, R.C.2919.25(A) defines the offense of domestic violence as,

"No person shall knowingly cause or attempt to cause physical harm to a family or household member."

Household member is defined by R.C.2919.25(F):

(F) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:

(1) "Family or household member" means any of the following:

(a) Any of the following who is residing or has resided with the offender:

(i) A spouse, a person living as a spouse, or a former spouse of the offender;

(ii) A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender;

(iii) A parent or a child of a spouse~ person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

Petitioner's trial counsel raised a Crim. R. 29 motion for a directed verdict of acquittal and the evidence was insufficient to establish the

elements of the offense of domestic violence and likewise, the elements to convict for aggravated burglary were not present either.

This argument was addressed on direct appeal and to the Ohio Supreme Court in the memorandum in support of jurisdiction as a sufficiency of the evidence argument.

Petitioner was denied due process when he was convicted of Aggravated Burglary despite that the elements of the offense were not present.

**Ground Four:** The trial court erred when it imposed the maximum consecutive sentence of eleven years in violation of the Sixth Amendment as well as due process violations arising from the trial court's failure to afford him the protections of Ohio law when imposing a maximum sentence.

**Supporting Facts:** Petitioner was denied his Sixth Amendment rights and was denied due process when the trial court sentenced Garrison to an illegal sentence under Ohio law as his sentence constituted the maximum possible sentence for these convictions without the requisite findings by the trial court.

Ohio Revised Code [§] 2953.08(G)(2) sets forth the standard of review for all felony sentences in Ohio. Under this code the appellate courts may increase, reduce or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing.

At sentencing the trial court has a duty to consider the principles and purposes of sentencing, to essentially balance the factors as required by Ohio Revised Code [§§] 2929.11, 2929.12 and 2929.14 prior to imposing a consecutive sentence, in Petitioner's case, the trial court failed to do so. The trial court fails to perform this function even if they provide "lip service" by using the "magical words" when imposing sentence.

Garrison filed a direct appeal as to this issue. The Appellate Court entered into a fact finding expedition and was able to find that there are possible relevant factors to support the imposition of this sentence based on Petitioner's extensive criminal history and a history of probation violations. Nevertheless, this is a Due Process violation. The trial court is required to make these findings prior to imposing sentence, not after and certainly not by an appellate court.

> The record that was considered by the trial court does not support the sentencing court's findings, and the sentence is otherwise contrary to law. Petitioner has shown by clear and convincing evidence that the trial court erred and violated his Sixth Amendment rights as well as Due Process violations.

(Petition, ECF No. 3, PageID 67-68, 70-71, 73-74, 77.)

# Analysis

## Ground One:  Violation of the Confrontation Clause

In his First Ground for Relief, Garrison argues Sixth Amendment right to confront the witnesses against him was violated when the trial court allowed Deputy Sheriffs Hamilton and Williams to testify to statements made to them on the scene by Nikki Dickinson and Brian Hohnwald.

Garrison asserts this testimony also violated his rights under analogous provisions of the Ohio Constitution.  Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). Therefore, this Court will not consider the alleged violations of the Ohio Constitution.

As to Ground One, Respondent raises the affirmative defense that it is procedurally defaulted (Return, ECF No. 8, PageID 351).  Petitioner responds that either there was no procedural default or he can show cause and prejudice to excuse it or not to hear this claim on the merits would work a manifest miscarriage of justice (Traverse, ECF No. 11, PageID 391-407, supported by 111 single-spaced endnotes, PageID 434-520.)

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Engle v. Isaac*, 456 U.S. 107, 110 (1982); *Wainwright v. Sykes*, 433 U.S. 72 (1977). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000) (quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S. Ct. 612, 175 L. Ed. 2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman*, 501 U.S., at 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See McCleskey v. Zant, 499 U.S. 467, 493, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010) (en banc); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord *Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), quoting *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Garrison presented his Confrontation Clause claim as his first assignment of error on direct appeal and the Fifth District decided it as follows:

> {¶ 9} Appellant argues his Sixth Amendment right to confront witnesses against him was violated by the admission into evidence

of statements made by Nikki Dickinson and Brian Hohnwald through the testimony of Deputies Hamilton and Williams.

{¶ **10**} Deputy Hamilton testified Dickinson told him Appellant arrived at the residence, and she asked him to leave. He walked around her and entered the apartment. He went to the bedroom where Ryan Wilt was located. Dickinson got between them, pushing Appellant back. Appellant struck her with a wooden box containing marbles. After she pushed him out the door, Appellant kicked it, damaging the door frame. Appellant objected at the time of this testimony on the basis of hearsay, but not on the basis of a violation of the Confrontation Clause. The trial court overruled the objection and allowed the testimony.

{¶ **11**} On direct examination, Deputy Williams did not testify to any statements made by Hohnwald. On cross-examination, Williams testified Hohnwald said the box of marbles fell to the floor. On re-direct, Williams testified Hohnwald explained he witnessed the altercation between Dickinson and Appellant, but was not sure if Appellant hit Dickinson with the box. Williams further testified Hohnwald told him Appellant kicked the door in. Again, Appellant objected only on the basis of hearsay, and the objection was overruled.

{¶ **12**} After the State rested its case and just prior to making a Crim. R. 29 motion for a directed verdict of acquittal, Appellant objected to the statements made by Dickinson and Hohnwald on the basis of violation of the Confrontation Clause.

{¶ **13**} The Confrontation Clause of the Sixth Amendment to the U.S. Constitution guarantees "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held testimonial statements of a witness who does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is unavailable to testify, and the defendant had a prior opportunity for cross-examination.

{¶ **14**} Confrontation Clause claims not preserved by objection are reviewed for plain error. *State v. Hartman*, 2nd Dist. No. 26609, 2016-Ohio-2883, 64 N.E.3d 519, P 83, appeal not allowed, 146 Ohio St. 3d 1515, 2016-Ohio-7199, 60 N.E.3d 7, ¶ 83 (2016). Although Appellant objected on the basis of a Confrontation Clause violation, he failed to do so until after the State had rested its case. Evid. R. 103(A) states:

(A) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]

{¶ 15} In *State v. Bahns*, 2nd Dist. No. 22922, 185 Ohio App. 3d 805, 2009-Ohio-5525, 925 N.E.2d 1025, the defendant failed to object to the introduction of hearsay evidence included in reports until the day after the witness testified, when the state had already presented its entire case. The motion was found to be untimely, and therefore insufficient to preserve the issue for appeal. *Id.* at ¶ 24

{¶ 16} Likewise, in the instant case, we find the Confrontation Clause objection to be untimely and insufficient to preserve the issue for appeal. Having presented its case through the testimony of the two deputies without objection, the State was free to release Dickinson and Hohnwald if, in fact, the State had intended to call either witness, or to rest its case without securing the in-court testimony of either witness. Had counsel raised a timely Confrontation Clause objection, and such objection been sustained, the State would have had the opportunity to attempt to present the testimony of the witnesses in order to give Appellant an opportunity to confront them. We find the objection in the instant case which was made after the State rested to be untimely. Accordingly, Appellant has waived all but plain error.

{¶ 16} The Ohio Supreme Court has recently clarified the standard of review for plain error:

Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St. 3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious defect in the trial proceedings,'" *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002- Ohio 68, 759 N.E.2d 1240 (2002).

> Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id.* We recently clarified in *State v. Rogers*, 143 Ohio St. 3d 385, 2015-Ohio-2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *Id.* at ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).
>
> If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*State v. Thomas*, 2017-Ohio-8011, ¶¶ 32-34, 152 Ohio St. 3d 15,

{¶ 18} Appellant has not demonstrated a reasonable probability the error affected the outcome of the trial. Had Appellant timely objected, the State would have had the opportunity to present the testimony of Dickinson and Hohnwald. Because we do not know what these witnesses would have testified to had Appellant been given the opportunity to confront them, we are unable conclude on this record the result of the proceeding would have been different had a timely Confrontation Clause objection been raised. Possibly both witnesses would have testified in accordance with their statements as presented through the testimony of Deputies Hamilton and Williams, and the outcome of the trial would have been the same. We find no plain error in the admission of the statements of Dickinson and Hohnwald through the testimony of the deputies.

{¶ 19} The first assignment of error is overruled.

*State v. Garrison,* 2018-Ohio-1048.

Ohio has a relevant procedural rule, the so-called contemporaneous objection rule: parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected. *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph

one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998). The Sixth Circuit has repeatedly held this is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), citing *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003), citing *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also*

Garrison's counsel violated the contemporaneous objection rule by not raising the Confrontation Clause objection until after the State had rested its case. Had he made the objection when the offending testimony was offered, the trial court could have prevented the jury from hearing the testimony altogether.

Relying on *Harris v. Reed,* 489 U.S. 255 (1989), Garrison argues that the Supreme Court of Ohio did not rely on the contemporaneous objection rule in declining to hear his case (Traverse, ECF No. 11, PageID 397-98). Where there has been one reasoned state court judgment rejecting a federal claim, there is a rebuttable presumption that later unexplained orders upholding the judgment or rejecting the same claim rest on the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). When the last state court to consider a case does not provide reasons for its decision, the district court must look at the last state court disposition providing reasons for the decision. *Joseph v. Coyle,* 469 F.3d 441, 450 (6th Cir. 2006); *Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir. 1991).

Petitioner acknowledges that the Fifth District relied in part on the contemporaneous objection rule, but asserts they finally did decide his Confrontation Clause claim on the merits in

the course of their plain error review. However, the Sixth Circuit Court of Appeals has held an Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d at 337; *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros,* 422 F.3d at 387; *Hinkle,* 271 F.3d at 244 , citing *Seymour v. Walker*, 224 F.3d at 557 (plain error review does not constitute a waiver of procedural default).

Garrison he can show excusing cause and prejudice in his attorney's failure to make the contemporaneous objection. Garrison presented that claim of ineffective assistance of trial counsel to the Fifth District which determined he had failed to demonstrate the result of the proceeding would have been different if the objection had been made, essentially finding no prejudice under the second prong of *Strickland v. Washington*, 466 U.S. 668 (1984). *State v. Garrison,* 2018-Ohio-1048*, at ¶ 26. The reason given by the Fifth District is that, if a Confrontation Clause objection had been sustained, "the State would have had the opportunity to present the testimony of Dickinson and Hohnwald." *Id.* at ¶ 18.

Garrison disputes this conclusion of the Fifth District, asserting "[a]ll parties involved in this case clearly knew that the victims identified did not want to testify in anyway [sic], shape or form. . . . The State would have had an opportunity to compel the victims to be present for trial [which it should be noted that they would not have shown] and the State would have been forced to dismiss their case, [so long as the victims refused to show for trial] as it would have been a direct violation of the Confrontation Clause." (Traverse, ECF No. 11, PageID 405, 406 (alterations in original).) The factual bases for these assertions do not appear in the record. There are many reasons why victims of domestic violence do not want to testify. In this case Dickinson was the victim of prior domestic violence by Garrison. This Court will not speculate as to why she did not

16

appear for trial but it also cannot rely on Petitioner's assertion that she did not want to. As the Fifth District noted, the State would have had the power to compel Dickinson and Hohnwald to appear. *Garrison*, 2018-Ohio-1048, at ¶ 16. Had they failed to appear pursuant to subpoena, they could have been jailed for contempt of court until the agreed to testify. Serious felony cases cannot be made to disappear just because witnesses do not want to testify.

Garrison also asserts that failure to consider Ground One on the merits would work a miscarriage of justice. But there is no miscarriage of justice exception to procedural default except upon proof of the actual innocence of the defendant. *Calderon v. Thompson*, 523 U.S. 538, 558 (1998) (holding that "avoid[ing] a miscarriage of justice as defined by our habeas corpus jurisprudence" requires "a strong showing of actual innocence"); *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Garrison has made no showing of actual innocence on evidence of the sort required. *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

Garrison's First Ground for Relief should therefore be dismissed as procedurally defaulted.


**Ground Two: Ineffective Assistance of Trial Counsel**


In his Second Ground for Relief, Garrison asserts his trial attorney provided constitutionally ineffective assistance in various ways. The Warden defends this Ground on the merits, claiming the Fifth District's decision on ineffective assistance of trial counsel is entitled to deference under 28 U.S.C. § 2254(d)(1) and (2) (Return, ECF No. 8, PageID 360).

Relying implicitly on *Harris*, 489 U.S. 255, Garrison notes that the Supreme Court of Ohio gave no reasons for rejecting his appeal (Traverse, ECF No. 11, PageID 408). For the reasons given above under Ground One, however, this Court must look through the opaque rejection of

the appeal by the Supreme Court to the decision on the merits by the Fifth District.

Garrison raised ineffective assistance of trial counsel as his second assignment of error on direct appeal and the Fifth District decided the issue as follows:

.

> {¶ 20} In his second assignment of error, Appellant argues his trial counsel was ineffective.
>
> {¶ 21} A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, Appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process the trial cannot be relied upon as having produced a just result. *Id.*
>
> {¶ 22} Appellant first argues in conclusory fashion counsel did not file a motion in limine seeking to limit "statements of witnesses as well as prior bad act evidence known to counsel." Brief of Appellant, p. 19. Appellant does not point to specific evidence counsel should have sought to exclude, nor does he argue a legal basis for the exclusion of such evidence. Accordingly, he has not demonstrated ineffective assistance of counsel in failing to file a motion in limine.
>
> {¶ 23} Next Appellant argues counsel was ineffective in failing to file a motion to suppress statements he made to law enforcement officials. Deputy Hamilton testified Appellant was advised of his *Miranda* rights, and then indicated he wished to speak to the deputy. The record does not establish a legal basis for a motion to suppress, and Appellant has not demonstrated counsel was ineffective in failing to file same.
>
> {¶ 24} Appellant argues counsel never attempted to focus the jury pool's attention on the State's burden of proof and waived opening statement where she could have focused the jury on the State's burden of proof. During jury selection, the prosecutor explained to the jury the State had the burden of proof. Tr. 20. The court instructed the jury regarding the State's burden of proving the offense beyond a reasonable doubt. Tr. 208-209. A jury is presumed

to follow the instructions given it by a trial judge. E.g., *State v. Garner*, 74 Ohio St. 3d 49, 1995-Ohio-168, 656 N.E.2d 623. Appellant has not demonstrated counsel was ineffective in failing to further emphasize the burden of proof at the start of the trial.

{¶ 25} Appellant argues counsel failed to use peremptory challenges to excuse several jurors who may have been biased. Appellant does not specify which jurors should have been challenged and has therefore not demonstrated ineffective assistance of counsel.

{¶ 26} Appellant argues counsel failed to object to out of court statements on the basis of violation of the Confrontation Clause. For the reasons stated in our discussion of Assignment of Error One earlier in this opinion, Appellant has not demonstrated the result of the proceeding would have been different had counsel objected.

{¶ 27} Appellant argues counsel asked a series of questions on cross-examination of Deputy Hamilton which allowed him to continue to testify concerning out of court statements. At this point in the trial, the objection to the admission of the statements on the basis of hearsay had been overruled. Trial counsel's decision to cross-examine a witness and the extent of such cross-examination are tactical matters. *State v. Diaz*, 9th Dist. Lorain No. 04CA008573, 2005-Ohio-3108, ¶ 26. As such, decisions regarding cross-examination cannot form the basis for a claim of ineffective assistance of counsel. *Id.* Appellant has not demonstrated counsel was ineffective in the cross-examination of Deputy Hamilton.

{¶ 28} Appellant argues counsel should have objected when deputy Hamilton was asked about Appellant "fleeing" the scene, as there was no evidence to suggest he fled the scene. On redirect examination, the following colloquy occurred:

> Q. Okay. You were asked if Mr. Garrison was at the scene when you arrived. Do you remember that question?
> A. Yes.
> Q. Do you have past experience with perpetrators of a crime fleeing the scene?
> A. Yes, it's common for individuals, or I should say suspects to leave prior to our arrival.

Tr. 142.

{¶ 29} The evidence is undisputed Appellant was not at the scene when the deputies arrived, and we find counsel was not ineffective for failing to object to this testimony.

19

{¶ 30} Next Appellant argues counsel was ineffective in opening the door to admission of the statements of Brian Hohnwald by asking Deputy Williams if anyone he spoke to told him they witnessed physical interaction between Garrison and Dickinson. Tr. 156. However, from this line of questioning, counsel procured testimony which demonstrated no one told the officer they saw Appellant strike Dickinson with a box, nor did they see Appellant throwing the box or holding the box in his hands. Tr. 157. Although Hohnwald's statement indicated he witnessed a physical altercation between Garrison and Dickinson, his statement to Williams was the box fell to the floor, contradicting Dickinson's statement Garrison struck her with the box. Tr. 158. Appellant has not demonstrated ineffective assistance of counsel in opening the door to the statement of Hohnwald, which in large part aided the defense.

{¶ 31} Appellant argues counsel should have objected to Williams's testimony Hohnwald told him Appellant kicked the door in. This testimony was cumulative of Dickinson's statement to Hamilton. Further, the deputies personally witnessed the damage to the door. Appellant has not demonstrated the outcome of the trial would have been different in the absence of this statement by Hohnwald.

{¶ 32} Appellant argues counsel should have continued to object to the prosecutor's characterization of the evidence regarding "fleeing" and Appellant's intent to "confront" Wilt at the residence. As discussed earlier, the evidence is undisputed Appellant left the scene after the incident. Further, although Appellant told police his intent was to talk to Wilt "man-to-man" for purposes of "peacekeeping," the jury could infer from all the evidence in the case and the circumstances surrounding Appellant's decision to go to Dickinson's apartment that his intent was in fact to confront Wilt concerning his relationship with Dickinson.

{¶ 33} Appellant argues counsel erred in failing to object to the court instructing the jury they could consider fleeing as evidence of guilt. Again, as discussed throughout this opinion, the evidence was undisputed Appellant left the scene after the confrontation with Dickinson. Appellant has not demonstrated a reasonable probability that in the absence of this instruction he would have been acquitted.

{¶ 34} Finally, Appellant argues counsel was ineffective in failing to request lesser-included offense instructions. A trial court is required to instruct on a lesser-included offense only where the evidence at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included offense.

*State v. Deanda*, 136 Ohio St. 3d 18, 2013-Ohio-1722, 989 N.E.2d 986. Appellant has failed to specify which lesser included offenses he believes were demonstrated by the evidence, and has therefore not demonstrated ineffective assistance of counsel.

{¶ 35} The second assignment of error is overruled.

*Garrison*, 2018-Ohio-1048.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

The Fifth District clearly understood that the relevant federal standard for ineffective assistance of trial counsel is that laid out in *Strickland v. Washington*, 466 U.S. 668 (1984); it cited *Strickland* as the governing law. *Garrison*, 2018-Ohio-1084, at ¶ 21. That standard is

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both

deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), citing

*Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694; accord *Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d

313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally*

Annotation, 26 ALR Fed 218. "The likelihood of a different result must be substantial, not just

conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington*, 562

U.S. at 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L Ed.2d 328 (2009) (per curiam); *Strickland*, 466 U.S. at 693, 104 S. Ct. 2052, 80 L.Ed.2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that

> counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington*, 562 U.S. at 111-112.

Counsel's performance is measured by "prevailing professional norms" at the time of the alleged errors. *Strickland,* 466 U.S. at 690; *Maryland v. Kulbicki*, 577 U.S. ___, 136 S. Ct. 2, 4(2015); *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997). *Kulbicki* rejects retrospective perfectionism regarding lawyer's conduct.

Contrary to Garrison's claim (Traverse, ECF No. 11, PageID 409), our review is deferential, not de novo.

> "A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fair-minded jurists could disagree" on the correctness of the state court decision," *Harrington v. Richter,* 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). The state court decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall,* 572 U.S. [415], ___ (2014), slip op. at 4.

> When the claim at issue is one for ineffective assistance of counsel, moreover, AEDPA review is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ___, ___ (2013), slip op. at 9) (quoting *Strickland v, Washington*, 466 U.S. 668, 690 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." at ___ (slip op. at 1).

*Woods v. Etherton*, 578 U.S. ___, 136 S. Ct. 1149, 1151 (2016) (per curiam), reversing *Etherton v. Rivard*, 800 F.3d 737 (6th Cir. 2015).

Garrison's sub-claims of ineffective assistance of trial counsel and the Fifth District's disposition of them are considered seriatim.

**Sub-claim One:  Failure to Contemporaneously Object to Confrontation Clause Violation**

Garrison does not separately argue this sub-claim, but incorporates his argument under Ground One, which is dealt with above.

**Sub-claim Two:  Failure to File Motion in Limine**

Garrison first claims his counsel was ineffective for failing to file a motion in limine to exclude prior bad acts evidence.  The Fifth District found this claim was made in conclusory form without referring to specific evidence.  *Garrison*, 2018-Ohio-1048, at ¶ 22.  Despite claiming that the Fifth District would have known what he was complaining about "through the brief," (Traverse, ECF No. 11, PageID 410), Garrison gives no reference to any part of his Brief on Appeal.  The argument on the Second Assignment of Error appears at pages 18-23 of that Brief (State Court Record, ECF No. 7, Ex. 7, PageID 130-35).  The entire argument on this sub-claim reads

> First of all, trial counsel did not file a motion in limine seeking to limit any of the evidence that the State of Ohio was seeking to admit. Counsel knew that there were statements of witnesses as well as prior bad act evidence known to counsel that was [sic] never challenged prior to trial by way of motion.

*Id.* at PageID 131.  As the Fifth District correctly noted, the Brief does not refer either to any specific evidence that supposedly should have been excluded nor to any legal basis for doing so.

In his Traverse, Garrison cites one instance[2] of testimony by Deputy Hamilton about Garrison's prior conviction for domestic violence and argues that both Ohio R.Evid. 404(B) and Fed.R.Evid. 404(B) would have excluded this testimony. The Federal Rules of Evidence do not apply to trials in state courts. While Ohio R.Evid. 404(B) does limit the use of prior convictions, here the State was required to prove the prior convictions to establish the specifications to Count Two of the Indictment that Garrison had previously been convicted of two or more offenses of domestic violence (See Indictment, State Court Record, ECF No. 7, Ex. 1, PageID 90). Use of the prior convictions to prove the prior convictions is not a violation of Evid.R. 404(B).

**Sub-claim Three: Failure to File Motion to Suppress Statements**

Garrison argues that if counsel had filed a motion to suppress, there would have been a "factfinding hearing . . . to clearly establish that his rights were not violated." (Traverse, ECF No. 11, PageID 412.) The Fifth District found that after Deputy Hamilton advised Garrison of his *Miranda* rights, Garrison asked to speak to him. *Garrison*, 2018-Ohio-1084, at ¶ 23. Garrison makes no claim that finding is incorrect and does not suggest any rights that were violated in the interrogation. Where there is no legal basis for suppression, a lawyer does not provide ineffective assistance of trial counsel by failing to move for a hearing so as to make the State and the courts "go through the motions."

**Sub-claim Four: Failure to Argue Burden of Proof in an Opening Statement**

---

[2] Garrison specifically calls this "one instance," but he cites no others.

Garrison claims he received ineffective assistance of trial counsel when his attorney waived opening statement and thereby failed to "focus" the jury on the burden of proof (Traverse, ECF No. 11, PageID 412).

The Fifth District noted that the trial court had instructed the jury on burden of proof. *Garrison*, 2018-Ohio-1048, at ¶ 24, referring to specific pages of the trial transcript. Garrison objected in his Traverse that those pages were not in the record before this Court (ECF No. 11, PageID 413-14), but that omission was subsequently corrected on Magistrate Judge Vascura's Order (ECF Nos. 13, 14). The trial judge's instruction on the burden of proof is legally correct and now appears at PageID 735-36.

Moreover, Garrison has made no showing that professional standards at the time of his trial required counsel to give an opening statement emphasizing the burden of proof. It is a not uncommon strategic move for defense counsel to require the State to "show their cards" before disclosing what the defense will attempt to prove.

**Sub-claim Five: Failure to Use Peremptory Challenges to Excuse Biased Jurors**

The Fifth District summarily rejected this claim because Garrison did "not specify which jurors should have been challenged. . . ." *State v. Garrison*, 2018-Ohio-1048, ¶ 25. Garrison says he cannot respond because he does not have a transcript of the voir dire, although appellate counsel did (Traverse, ECF No. 11, PageID 414). The argument on appeal reads in its entirety: "Also, counsel failed to use pre-emptory [sic] challenges to excuse several jurors that for one reason or another could have been biased based on certain relationships to parties or to the court system. (T. Tr., pgs. 79-88)." (State Court Record, ECF No. 7, Ex. 7, PageID 131).

The Magistrate Judge has examined the referenced pages of the transcript (ECF No. 13-1, PageID 606-15), which show defense counsel exercised all available peremptory challenges and also do not include any of the voir dire examination which would have shown whatever basis there might have been for excusing different veniremen. Thus, the Fifth District was entirely correct in its decision that Garrison had shown no basis for excusing different prospective jurors.

**Sub-claim Six: Failure to Make Contemporaneous Confrontation Clause Objection**

Garrison makes no separate argument and this issue is dealt with under Ground One.

**Sub-claim Seven: Unnecessarily Extended Cross-Examination of Deputy Hamilton**

Garrison claims he received ineffective assistance of trial counsel when counsel continued to cross-examine Deputy Sheriff Hamilton so as to allow him to testify as to Brian Hohnhold's out-of-court statements. The Fifth District rejected this claim because the extent of cross-examination is treated as a tactical matter to be decided by counsel in her or his discretion and professional judgment. *Garrison*, 2018-Ohio-1048, at ¶ 27. Garrison has not shown this decision is inconsistent with Supreme Court precedent on this point. "[T]rial counsel's tactical decisions are particularly difficult to attack." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). Indeed, "strategic choices by defense counsel are 'virtually unchallengeable.'" *Buell v. Mitchell,* 274 F.3d 337, 359 (6th Cir. 2001), quoting *Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984).

**Sub-claim Eight: Failure to Object to Deputy Hamilton's Testimony About Garrison Fleeing the Scene**

On appeal, Garrison objected to Deputy Hamilton's testimony that Garrison had left or fled the scene by the time he arrived; the basis of the objection was that there was no evidence to support the testimony. The Fifth District quotes verbatim from the testimony to show that Garrison was not present when Hamilton arrived. *Garrison*, 2018-Ohio-1048, at ¶¶ 28-29.

In his Traverse, Garrison attempts to change the focus of the objection. Admitting that his non-presence at the scene at the Hamilton arrived was undisputed, he now objects to the inference to be drawn from that fact.

> However, an essential element to fleeing is the animus in which it is contrived. Fleeing the scene typically denotes that one is guilty of a transgression and is attempting to evade arrest for this action. Here, Garrison simply left the scene without any knowledge that he allegedly committed a criminal offense, thus not establishing that he "fled", only that he left the scene. It is undisputed that Garrison was assaulted on scene and merely left to avoid further confrontation with the opposing party. The essential element of fleeing was implied to the jury that Garrison left the scene in order to evade arrest and counsel failed to object to the question.

(Traverse, ECF No. 11, PageID 417.) Garrison gives no record reference to the alleged fact that he was assaulted on the scene. Nor did he testify as to what his motive was for leaving. Because fleeing the scene of a crime permits an inference of a guilty conscience, a defendant who does leave the scene and then does not testify leaves a jury free to make that inference. It is not at all clear that an objection by counsel on this issue would have been sustained, rendering this sub-claim unavailing.

### Sub-claim Nine: "Opening the Door" with Deputy Williams

In his ninth sub-claim, Garrison argues trial counsel was ineffective when she "opened the door" to Deputy Williams' testifying about statements by Hohnwald (Traverse ECF No. 11,

PageID 417-18.) As the Fifth District pointed out, there was no prejudice because Williams' testimony was favorable to Garrison and in fact he was acquitted on the domestic violence count. *Garrison*, 2018-Ohio-1048, at ¶¶ 7, 30.


**Sub-claim Ten: Failure to Object to Williams' Testimony About Hohnwald's Statement about Damage to the Door**

As to this sub-claim, the Fifth District essentially found no prejudice because the testimony was cumulative. *Garrison*, 2018-Ohio-1048, at ¶ 31. Garrison provides no rebuttal to that finding.


**Sub-claim Eleven: Failure to Object to the Mischaracterization of Garrison's Actions**


Garrison claims he received ineffective assistance of trial counsel when his attorney failed to object to the prosecutor's characterization of Garrison's leaving the scene as "fleeing" and of his intent being to "confront" Dickinson's current boyfriend (Traverse, ECF No. 11, PageID 420). He criticizes the Fifth District's decision as not deciding the ineffective assistance of trial counsel claim, but instead "deduc[ing] what the jury deliberated on without express knowledge of how or why the jury reached its decision." *Id*.

Garrison misunderstands the Fifth District's decision. Obviously, the appellate judges did not know what the jury's deliberations were. It would be very rare for a court of appeals to have that knowledge, which only happens when there is an allegation of jury tampering. From Appellant's Brief, it is clear that these characterizations by the prosecutor were made during closing argument (State Court Record, ECF No. 7, Ex. 7, PageID 134). Prosecutors are allowed a good deal of leeway in arguing a case to the jury. Because of that, objections to these

characterizations would likely have been overruled. Trial judges are particularly sensitive to attorneys interrupting one another's closing arguments and for that reason it is usually a good tactic to be tolerant of an opponent's argument. For that matter, these two characterizations are fair argument, given the evidence presented.

**Sub-claim Twelve: Failure to Object to the "Fleeing" Instruction**

The Fifth District rejected this claim of ineffective assistance of trial counsel because the evidence justified the instruction. *Garrison*, 2018-Ohio-1048, at ¶ 33. For reasons already given, any objection to this instruction would likely have been overruled.

**Sub-claim Thirteen: Failure to Seek Instructions on Lesser Included Offenses**

The Fifth District held against Garrison on this claim because he had not "specif[ied] which lesser-included offenses were demonstrated by the evidence[.]" *Garrison*, 2018-Ohio-1048, at ¶ 34. In his Traverse, Garrison now lists what he thinks those offenses should be (Traverse, ECF No. 11, PageID 422). However, he does not dispute that they were not explained in his appellate brief, and in fact they are not. The Brief reads that "[t]here are plenty of lesser included offenses that the jury could perhaps [have] had the alternative of finding had they been given the instructions, including burglary, criminal trespass etc, . . ." (State Court Record, ECF No. 7, Ex. 7, PageID 134). While some possible lesser included offenses are listed, appellate counsel made no attempt to show how the evidence would have supported acquittal on the aggravated burglary charge and guilty on a lesser charge.

In the body of his Traverse, Garrison offers a two-page argument that he received

ineffective assistance of appellate counsel in the way his appellate attorney presented his ineffective assistance of trial counsel claims on direct appeal (Traverse, ECF No. 11, PageID 423-24). However, Garrison has pleaded no independent claim of ineffective assistance of appellate counsel. Before he could rely on ineffective assistance of appellate counsel to excuse the presentation on direct appeal, he would have had to raise that claim in the Fifth District by way of an Application to Reopen under Ohio R.App.P. 26(B). *Edwards v. Carpenter*, 529 U.S. 446 (2000). He has not done so and the time within which eh could have filed such an application has long since expired.

The Magistrate Judge concludes that the Fifth District's decision on Garrison's ineffective assistance of trial counsel claims is not an unreasonable application of *Strickland* and its progeny. Therefore, the Second Ground for Relief should be dismissed.

**Ground Three: Insufficiency of the Evidence**

In his Third Ground for Relief, Garrison argues his conviction is not supported by sufficient evidence. Respondent notes that Garrison's analogous claim in the Fifth District was a manifest weight claim and that that is not a claim cognizable under the United States Constitution. While acknowledging that this claim was presented on appeal as a manifest weight claim, Garrison relies on *Nash v. Eberlin,* 258 F. App'x 761 (6th Cir. 2007), for the proposition that presenting a manifest weight claim in state court preserves an insufficiency of the evidence claim for federal habeas (Traverse, ECF No. 11, PageID 425). Although *Nash* is unpublished and therefore not binding precedent, this Court has previously followed *Nash* to reach the same conclusion. *Hughes v. Warden*, No. 1:10-cv-91, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011) (Merz, Mag. J.), report and recommendations adopted at 2011 U.S. Dist. LEXIS 54132 (S.D. Ohio May 20,

2011) (Dlott, C.J.)).  The Court agrees with Respondent (Return of Writ, ECF No. 8, PageID 348),

that a manifest weight claim, pleaded as such, is not cognizable in habeas corpus.  *Johnson v.*

*Havener*, 534 F.2d 1232, 1234 (6th Cir. 1986).  But Garrison has pleaded his Ground Three as an

insufficiency claim, and *Nash* recognizes our authority to decide it on that basis.

An allegation that a verdict was entered upon insufficient evidence states a claim under the

Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v.*

*Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d

987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990) (en banc).  In order

for a conviction to be constitutionally sound, every element of the crime must be proved beyond a

reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the
> light most favorable to the prosecution, any rational trier of fact
> could have found the essential elements of the crime beyond a
> reasonable doubt . . . .  This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence and to draw reasonable inferences
> from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States*

*v. Somerset*, No. 3:03-po-2, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007) (Rice, J.).  This rule

was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law

which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt.  *In re Winship,* 397 U.S. at 364.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214) (the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to

> convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6ᵗʰ Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *Davis v. Lafler,* 658 F.3d 525, 531 (6ᵗʰ Cir. 2011) (en banc); *Tucker v. Palmer*, 541 F.3d 652 (6ᵗʰ Cir. 2008) . Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S.Ct. 2, 181 L Ed.2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was

'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S.
___, ___, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012) (per curiam); accord *Parker*, 567 U.S. at 43 (2012).

In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997), superseded by constitutional amendment

on other grounds as stated in *State v. Smith*, 80 Ohio St. 3d 89, 102 n.4 (1997), the Supreme Court

of Ohio reaffirmed the important distinction between appellate review for insufficiency of the

evidence and review on the claim that the conviction is against the manifest weight of the evidence.

It held:

> In essence, sufficiency is a test of adequacy. Whether the evidence
> is legally sufficient to sustain a verdict is a question of law. *State v.
> Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148.
> In addition, a conviction based on legally insufficient evidence
> constitutes a denial of due process. *Tibbs v. Florida* (1982), 457
> U.S. 31, 45, 102, 387 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, *citing
> Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d
> 560. Although a court of appeals may determine that a judgment of
> a trial court is sustained by sufficient evidence, that court may
> nevertheless conclude that the judgment is against the weight of the
> evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-
> 389, 124 N.E.2d at 149. Weight of the evidence concerns "the
> inclination of the greater amount of credible evidence, offered in a
> trial, to support one side of the issue rather than the other. It
> indicates clearly to the jury that the party having the burden of proof
> will be entitled to their verdict, if, on weighing the evidence in their
> minds, they shall find the greater amount of credible evidence
> sustains the issue which is to be established before them. Weight is
> not a question of mathematics, but depends on its effect in inducing
> belief." (Emphasis added.)
>
> When a court of appeals reverses a judgment of a trial court on the
> basis that the verdict is against the weight of the evidence, the
> appellate court sits as a "'thirteenth juror'" and disagrees with the
> factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S.
> at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin*
> (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d
> 717, 720-721 ("The court, reviewing the entire record, weighs the
> evidence and all reasonable inferences, considers the credibility of
> witnesses and determines whether in resolving conflicts in the
> evidence, the jury clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387. In *State v. Martin*, 20 Ohio App. 3d 172 (1st Dist. 1983) (cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

> In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. …

*Martin,* 20 Ohio App. 3d 172, paragraph three of the syllabus. The consequences of the distinction are important for a criminal defendant. The State may retry a case reversed on the manifest weight of the evidence; retrial of a conviction reversed for insufficiency of the evidence is barred by the Double Jeopardy Clause. *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

The Fifth District decision on Garrison's manifest weight claim is as follows:

> {¶ 36} In his third assignment of error, Appellant argues his conviction of aggravated burglary is against the manifest weight of the evidence.

> {¶ 37} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1983).

> {¶ 38} Appellant was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1):

"(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

(1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]"

{¶ 39} Appellant argues the evidence does not demonstrate he entered the apartment with purpose to commit a criminal offense, and further does not demonstrate he inflicted physical harm, or attempted or threatened to inflict physical harm.

{¶ 40} While Appellant argues he went to the apartment to see Wilt for peacekeeping purposes, from all the other evidence presented the jury could infer his intention when he entered the apartment was to commit a criminal offense against Wilt, the new boyfriend of Appellant's former girlfriend. While he told Deputy Hamilton he simply wanted to talk man-to-man with Wilt, who was a friend, he also commented to Hamilton Dickinson's "vagina was a revolving door," from which the jury might infer Appellant was angry about her relationship with Wilt despite his claim of peacekeeping. Tr. 125. Appellant was free on bond after an arrest for domestic violence against Dickinson, and a condition of his bond was he was to not have contact with her. Appellant admitted Dickinson did not want him to enter the apartment. There was evidence presented he pushed past Dickinson to get to Wilt, with Dickinson ultimately pushing him out of the apartment, locking the door behind him. The State presented evidence he kicked the door, damaging the door frame. From all of this evidence, we do not find the jury lost its way in concluding Appellant entered the apartment with purpose to commit a criminal offense.

{¶ 41} Appellant also argues because the jury found him not guilty of domestic violence, they rejected the testimony he struck Dickinson with the box of marbles, and therefore the finding he inflicted, or attempted or threatened to inflict, physical harm is against the manifest weight of the evidence. [Footnote omitted.]

{¶ 42} R.C.2919.25(A) defines the offense of domestic violence,

"No person shall knowingly cause or attempt to cause physical harm to a family or household member." Household member is defined by R.C.2919.25(F):

> (F) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:
>
> (1) "Family or household member" means any of the following:
>
> (2)
> (a) Any of the following who is residing or has resided with the offender:
>> (i) A spouse, a person living as a spouse, or a former spouse of the offender;
>> (ii) A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender;
>> (iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.
>
> (b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.
>
> (2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

{¶ 43} Appellant argued in his Crim. R. 29 motion for a directed verdict of acquittal and in closing argument the evidence was insufficient to establish Dickinson was a household or family member, as the only evidence with regard to the issue was Hamilton's testimony the last name of Dickinson's two children is Garrison, nor was there evidence Appellant previously resided with Dickinson. Tr. 169-170, 196-197. Therefore, the record does not affirmatively demonstrate the jury did not believe Dickinson's statement Appellant struck her in the face with a box of marbles. Further, Hamilton testified after denying knowing how the box was damaged, Appellant mentioned helping Dickinson pick up the marbles, which Hamilton found odd. Tr. 126. Based on the evidence

Appellant struck Dickinson with a box of marbles while inside the evidence, the jury's finding Appellant inflicted or attempted to inflict physical harm on Dickinson while inside the residence is not against the manifest weight of the evidence.

{¶ 44} The third assignment of error is overruled.

*Garrison*, 2018-Ohio-1048.

Garrison correctly argues that this Court must decide whether the Fifth District's decision is contrary to or an objectively unreasonable application of *Jackson*) (Traverse, ECF No. 11, PageID 427). By deciding that the conviction for aggravated burglary was not against the manifest weight of the evidence, the Fifth District implicitly determined that a rational trier of the facts could have found Garrison guilty. *Nash,* 258 F. App'x at 765 *; Hughes,*2011 U.S. Dist. LEXIS 54131, at *3; *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082, at *36 (N.D. Ohio May 10, 2011).

With respect to Garrison's intent to inflict physical harm on Ryan Wilt, Garrison is correct that there is no direct evidence of his intent to harm Wilt. By its very nature, however, intent is an element which must be found from circumstantial evidence. Even when a person declares his intent, that is only circumstantial evidence, because intent is an internal mental state and people are known to lie frequently about their mental states. The Fifth District noted Garrison's self-serving comment to Deputy Hamilton that he was there to talk with Wilt man-to-man as a friend. But it also noted Garrison's comments on Dickinson's sexual proclivities and the fact that Garrison was free on bond for domestic violence against Dickinson and was not supposed to be at the apartment. *Garrison*, 2018-Ohio-1048, at ¶ 40

Garrison did not testify at trial and subject his story of what happened to cross-examination (See Index of Witnesses, Trial Transcript, ECF No. 13-1, PageID 530). He now claims

> [I]t is established that Garrison went to 110 Eagle View Drive, Apt.
> E - his address upon which he leased from a building management
> corporation. Garrison lived with Nikki Dickinson and their two
> children at this address. As the result of an unrelated matter,
> Garrison was precluded from any contact with Nikki Dickinson.
> Garrison went to the address on the day in question to spend time
> with his children, like he did on many other occasions. Furthermore,
> Garrison went to the residence in good faith to establish some
> guidelines moving forward with his friend, Ryan Wilt, as he was
> currently in a relationship with Dickinson. This was conveyed at
> trial when Garrison stated that he went there to speak to Wilt "man-
> to-man" or in other words face to face, one speaking to the other
> privately, not for the intention to cause physical harm to another.

(Traverse, ECF No. 11, PageID 428). None of this is "established." Garrison gives no record

reference to proof the lease was in his name. Whether a bond condition of "no contact with Nikki

Dickinson," imposed on a prior domestic violence charge is "unrelated" to coming to Nikki

Dickinson's residence to "establish some guidelines going forward" with someone then thought

by Garrison to be engaged in a sexual relationship with Dickinson is not established; it is not even

testified to by Garrison. A habeas corpus petitioner cannot supplement the record by unsworn

statements of fact. Indeed, as a matter of law, even a sworn affidavit from Garrison would be

inadmissible in these proceedings. *Cullen v. Pinholster*, 563 U.S. 170 (2011). A rational trier of

the facts could infer from the circumstantial evidence presented that Garrison intended to inflict

physical harm on Wilt.

A rational trier of the facts could also infer from the circumstantial evidence that Garrison

actually inflicted physical harm on Nikki Dickinson. Garrison argues from the jury's not guilty

verdict on the domestic violence account that they found he did not do so. But as the Fifth District

points out, Garrison gave them an additional basis for acquittal by arguing that the State had not

proved Dickinson qualified as a "family member" as that term is defined in the domestic violence

statute quoted above.

The Fifth District's conclusion that the verdict was not against the manifest weight of the evidence implicitly decided that the verdict was supported by sufficient evidence. That conclusion is not an objectively unreasonable application of *Jackson*. Therefore, Ground Three should be dismissed on the merits.

**Ground Four: Improper Imposition of Maximum Sentence**

In his Fourth Ground for Relief, Garrison claims the trial court violated the Sixth Amendment when it sentenced him to the maximum possible sentence of eleven years on the aggravated burglary conviction.

Respondent asserts Garrison procedurally defaulted any constitutional claim as to the length of his sentence because he did not present any constitutional claim to the Fifth District, arguing this matter solely under state law (Return, ECF No. 8, PageID 377-79). Alternatively, Respondent asserts that Ground Four, to the extent it raises only state law issues, is not cognizable in habeas corpus. *Id.* at 379-80, citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

While conceding that this issue was argued as an abuse of discretion at the appellate level, Garrison asserts he raised Due Process and Double Jeopardy arguments when he appealed to the Supreme Court of Ohio. In his Memorandum in Support of Jurisdiction, he did claim that holding against him at sentencing prior cases where he was acquitted violated the Double Jeopardy Clause; the Due Process Clause is not mentioned.

Raising a claim for the first time on appeal from an Ohio court of appeals to the Supreme Court of Ohio does not cure a procedural default in failing to present that claim in the court of appeals because the state Supreme Court will not ordinarily consider a claim of error that was not

raised in any way in the Court of Appeals and was not considered or decided by that court. *State v. Williams,* 51 Ohio St. 2d 112 (1977), paragraph two of the syllabus (*Toledo v. Reasonover*, 5 Ohio St. 2d 22 (1965), approved and followed), vacated and remanded in part on other grounds in *Williams v. Ohio*, 438 U.S. 911 (1978). This explicitly includes constitutional questions. *State v. Phillips,* 27 Ohio St. 2d 294, 301-02 (1971). This rule is discretionary with the Supreme Court of Ohio, not jurisdictional. That is, that court can disregard a waiver in the Court of Appeals and consider a constitutional question where there is "plain error or the rights and interests involved may warrant it. *In re M.D.*, 38 Ohio St. 3d 149, 151 (1988). This rule is consistent with the general rule in American jurisprudence that a person may not raise on appeal issues not raised in the court below. *Singleton v. Wulff,* 428 U.S. 106, 120 (1976); *Girl Scouts of Middle Tenn., Inc. v. Girl Scouts of the U.S.A.,* 770 F.3d 414, 427 (6th Cir. 2014) *Ralph Schrader, Inc., v. Diamond International Corp.*, 833 F.2d 1210, 1214 (6th Cir. 1987).

In the alternative, Garrison's Fourth Ground, construed as a double jeopardy claim, is without merit.

The claim Garrison intends to make in his Fourth Ground is confused. In his Petition, he asserts that failure of the trial judge to follow Ohio law in sentencing deprived him of due process, a Fourteenth Amendment claim. But failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), overruled in part on other grounds by

*Thompson v. Keohane,* 516 U.S. 99 (1995).

In his statement of this claim in the Petition, Garrison also mentions the Sixth Amendment (Petition, ECF No. 3, PageID 77), but fails to specify what Sixth Amendment right he believes was violated. Although he mentioned the Double Jeopardy Clause in his appeal to the Supreme Court of Ohio, he says nothing about double jeopardy in his Petition here. When he reaches his Traverse, however, he clearly claims that the sentencing judge's focus on prior cases where he was acquitted violated his double jeopardy rights (ECF No. 11, PageID 431-33). The Magistrate Judge analyzes this claim as a double jeopardy matter.

In deciding this claim on appeal, the Fifth District noted that Ohio law authorizes an appellate court to modify a sentence or remand for resentencing only "if the court finds by clear and convincing evidence '(a) [t]hat the record does not support the sentencing court's findings[,]' or '(b) [t]hat the sentence is otherwise contrary to law.'" *Garrison,* 2018-Ohio-1048, at ¶ 47, quoting Ohio Rev. Code § 2953.08(G)(2). The Fifth District rejected as a matter of Ohio law the claim that a sentencing judge could not consider past criminal and social history, including allegations of crimes for which the offender was never prosecuted. *Id.* at ¶ 53 (internal quotations and citations omitted). It concluded:

> The record reflects Appellant has an extensive criminal history, and has not responded favorably to criminal sanctions in the past as demonstrated by his history of probation violations. Further, he was on bond for a separate offense involving the same victim at the time he committed the instant offense, and he was on community control at the time of the commission of that offense.

*Id.* at ¶ 54.

Just as this claim failed as a matter of Ohio law, it also fails as a matter of federal constitutional law. Garrison cites absolutely no federal precedent for the proposition that it

violated the Double Jeopardy Clause to consider past misconduct in imposing a present sentence. Of course, the sentencing judge cannot go back and reopen a prior acquittal and impose a sentence for a past crime on which a person was acquitted. But it happens daily in both state and federal courts that past misconduct reflected in a presentence investigation report is relied upon by a sentencing judge in selecting a current sentence within the range allowed by law.

Considered as a double jeopardy claim, Garrison's Ground Four is without merit in addition to being procedurally defaulted for lack of fair presentation.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

June 7, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(d), this period is extended to seventeen days

because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).