IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

STEPHEN M. GARRISON,

        Petitioner,    :    Case No. 2:18-cv-1153

  - vs -                        Chief Judge Edmund A. Sargus, Jr.
                                    Magistrate Judge Michael R. Merz

DAVID GRAY, Warden,
  Belmont Correctional Institution,

                                  :
        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 21) to the Magistrate Judge's Report and Recommendations (ECF No. 20) recommending dismissal of the case. Chief Judge Sargus has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (Recommittal Order, ECF No. 22).

The Objections are organized around each of the four grounds for relief and this Report will consider them in that order.

**Ground One: Violation of the Confrontation Clause**

In his First Ground for Relief, Garrison argues his Sixth Amendment right to confront the witnesses against him was violated when the trial court allowed Deputy Sheriffs Hamilton and Williams to testify to statements made to them on the scene by Nikki Dickinson and Brian

1

Hohnwald (Petition, ECF No. 3, PageID 67-68).

The Report found that this claim was procedurally defaulted because trial counsel had not made a contemporaneous objection on a Confrontation Clause basis until the State rested its case and the Fifth District Court of Appeals held this default against Garrison (ECF No. 20, PageID 799-800). Although Garrison claimed this failure to object constituted ineffective assistance of trial counsel, the Fifth District Court of Appeals disagreed and found that if the objection had been made at the time the deputies testified, the State could have called the two witnesses. *State v. Garrison*, 5th Dist. Muskingum, No. CT2017-0034, 2018-Ohio-1048, ¶ 18 (Mar. 22, 2018).

Garrison claims those two witnesses, one of whom was the victim of both this and prior domestic violence committed by Garrison, did not want to testify, but the Report notes there is no record evidence of this. The Report notes that if the witnesses would not come voluntarily, they could be subpoenaed and jailed for contempt if they refused to testify (ECF No. 20, PageID 800-01, citing *Garrison*, 2018-Ohio-1048, at ¶ 16.

Garrison objects that

> Magistrate Judge Merz is overreaching when he makes this statement. First. the analysis must be made on whether or not Ohio would have actually jailed Dickinson and Hohnwald had they failed to show for the subpoena if it had been issued. It is a common practice in Ohio that prosecutor offices do not hold alleged victims in jail when they refuse to testify in any particular type of criminal trial. Thus, as a matter of law, the Magistrate Judge's opinion that serious felony cases cannot be made to disappear just because witnesses do not want to testify is belied by practices employed by prosecutor's offices, not just in Ohio but throughout this country.

(Objections, ECF No. 21, PageID 833). Garrison offers absolutely no proof for this broad generalization about prosecutorial conduct. The Fifth District correctly held as a matter of law that if Garrison's trial attorney had made the Confrontation Clause objection contemporaneously with the alleged violation, it would have been open to the prosecution to call those witnesses. How

2

they would have responded is a matter of speculation; Garrison's assertion that they did not want to testify has no record basis. By waiting until the State rested and could no longer call additional witnesses, trial counsel played the Confrontation Clause claim one way, which could well have been a strategic choice.

Garrison next objects to the Report's reliance on the Fifth District's decision. Instead, the Magistrate Judge should have stayed the case "to have the Supreme Court of Ohio issue findings of fact and conclusions of law as to their determination" of the case (Objections, ECF No. 21, PageID 834.) This argument vastly overstates the authority of this Court. The jurisdiction of the Supreme Court of Ohio on appeal in felony cases is completely discretionary. That court is not compelled by law, including federal constitutional law, to explain its reasons for declining to exercise their discretionary jurisdiction. In this Court's experience, they do decline that jurisdiction in the vast majority of cases presented to them and they almost always do so with the summary form used in this case. *State v. Garrison*, 153 Ohio St. 3d 1442, 2018-Ohio-2834.. On that same day, July 18, 2018, for example, the Supreme Court of Ohio declined to exercise appellate jurisdiction in fourteen felony appeals, using the same form in each case. 153 Ohio St. 3d 1442.

Garrison asserts not only that this Court cannot look through the Supreme Court of Ohio's opaque decision, but that no "opinion of the United States Supreme Court" allows us to do so. In fact, the Report cites *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), which expressly held that where there has been one reasoned state court judgment rejecting a federal claim, there is a rebuttable presumption that later unexplained orders upholding the judgment or rejecting the same claim rest on the same ground (ECF No. 20, PageID 799, citing *Ylst*, 501 U.S. at 805). *Ylst* continues to be good law. A federal habeas court reviewing an unexplained state court decision on the merits

3

"should 'look through' that decision to the last related state court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. ___, 138 S.Ct. 1188, 1192 (2018); *Joseph v. Coyle,* 469 F.3d 441, 450 (6th Cir. 2006).

**Ground Two: Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Garrison asserts his trial attorney provided ineffective assistance of counsel. The Report noted that this claim had been presented to the Fifth District which, applying the correct federal standard, had found there was no ineffective assistance of trial counsel and denied relief (Report, ECF No. 20, quoting the Fifth District's opinion at length at PageID 802-05). The Report recommended deference to the Fifth District under 28 U.S.C. § 2254(d)(1) and (2). *Id*. at PageID 805-07. Garrison again objects to looking through the Supreme Court of Ohio's declination of jurisdiction, but that is mandatory practice under *Ylst* and *Wilson, supra.*

There are thirteen sub-claims under this Ground for Relief, treated separately below to the extent the Objections require it.

**Sub-claim One: Failure to Contemporaneously Object to Confrontation Clause Violation**

This sub-claim is dealt with in Ground One and Garrison makes no objection separate form that made on Ground One.

**Sub-claim Two: Failure to File Motion in Limine**

Garrison claims his counsel was ineffective for failing to file a motion in limine to exclude prior bad acts evidence. The Fifth District rejected this claim because it was made only in very summary fashion without reference to any specific evidence that supposedly should have been excluded. *Garrison*, 2018-Ohio-1048, at ¶ 22. In his Traverse, Garrison cited one instance where Deputy Sheriff Hamilton testified about his prior conviction for domestic violence. The Report concluded there was no ineffective assistance of trial counsel in failing to move to exclude this evidence because the Indictment contained a prior domestic violence specification which the State was required to prove (Report, ECF No. 20, PageID 808-09).

Now conceding that the State had to prove the prior convictions, Garrison claims it was ineffective assistance of trial counsel not to stipulate to them. That is a far different claim from the one made to the Fifth District, and cannot be introduced for the first time in a set of Objections. See, e.g., *Barker v. Robinson*, No. 3:19-cv-67, 2019 WL 1672896, at *3 (S.D. Ohio Apr. 17, 2019) (Merz, Mag. J.) ("A petition in habeas corpus cannot be amended by adding new claim in objections to a dispositive report and recommendations.").

**Sub-claim Three: Failure to File Motion to Suppress Statements**

Garrison claims his attorney should have moved under *Miranda v. Arizona*, 384 U.S. 436 (1966).to suppress his statements to Deputy Hamilton (Petition, ECF No. 3, PageID 70). The Report noted that the Fifth District had decided as a matter of fact that Garrison asked to speak to Hamilton after Hamilton gave him the *Miranda* warnings (Report, ECF No. 20, PageID 809, citing

*Garrison*, 2018-Ohio-1084, at ¶ 23). That is a state court finding of fact entitled to deference unless shown incorrect by clear and convincing evidence. 28 U.S.C. § 2254(d)(2). The Report noted Garrison had offered no evidence of that sort (Report, ECF No. 20, PageID 809).

Garrison now objects that "he was never read his *Miranda* rights," asserting that "[t]ypically these rights are read during the video taped recording of the interview and/or are read to the suspect and then they sign a document that they were read their rights. There is nothing in the record to prove that Deputy Hamilton in fact read Garrison his *Miranda* rights." (Objections, ECF No. 21, PageID 837-38.)

While there may not be a video recording or a signed *Miranda* waiver to corroborate Deputy Hamilton's testimony, he did testify that he read Garrison his *Miranda* rights and thereafter Garrison asked to speak to him. The Fifth District found that this testimony occurred and there is nothing in the record to contradict it. *Garrison*, 2018-Ohio-1084, at ¶ 23. Like his speculation that uncooperative witnesses are never jailed for contempt, Garrison notion that *Miranda* waivers are "typically" video recorded is also speculation with no record basis. The absence of this sort of corroboration for Hamilton's testimony does not make it untrue, especially considering that said testimony is unrebutted.

**Sub-claim Four: Failure to Argue Burden of Proof in an Opening Statement**

Garrison claims he received ineffective assistance of trial counsel when his attorney waived opening statement and thereby failed to "focus" the jury on the burden of proof (Traverse, ECF No. 11, PageID 412). The Fifth District found no prejudice because the trial court had correctly instructed on burden of proof. *Garrison*, 2018-Ohio-1048, at ¶ 24. The Report deferred to this

6

conclusion and also found that "[i]t is not an uncommon strategic move for defense counsel to require the State to 'show their cards' before disclosing what the defense will attempt to prove." (Report, ECF No. 20, PageID 810.)

Garrison disagrees, relying on *Taylor v. Kentucky*, 436 U.S. 478 (1978) (Objections, ECF No. 21, PageID 838, quoting *Taylor*, 436 U.S. at 484-85). In that case the Supreme Court held a state criminal defendant was entitled to a jury instruction on the presumption of innocence. In an excerpt from the decision quoted by Garrison, Justice Powell cited eminent legal scholars in the law of evidence, James Bradley Thayer, John Henry Wigmore, and Charles McCormick for the proposition that a presumption of innocence instruction should be given along with the standard proof beyond a reasonable doubt instruction.

Garrison has not made any claim that the trial judge refused to give a presumption of innocence instruction. Instead, his claim is that his trial attorney provided ineffective assistance of trial counsel when she did not give an opening statement that included emphasis on the burden of proof. *Taylor* does not support that position; it does not speak to ineffective assistance of trial counsel at all. It also ignores the strategic point made in the Report about not divulging the defense's case at the outset of trial.

Garrison appears to believe an opening statement can just be about whatever counsel wants it to be. On the contrary, an opening statement is supposed to be an outline of what the attorney will show, including what the defenses will be. It is not just an occasion to make an argument to the jury about what counsel believes is important. While it would not be improper to emphasize the burden of proof in opening, Garrison has cited no cases holding it is ineffective assistance of trial counsel to fail to do so. The Fifth District's conclusion that this was not ineffective assistance of trial counsel is therefore entitled to deference.

**Sub-claim Five: Failure to Use Peremptory Challenges to Excuse Biased Jurors**

In his Fifth sub-claim, Garrison asserts he received ineffective assistance of trial counsel when his trial attorney failed to use peremptory challenges to excuse biased jurors. The Fifth District rejected this claim because Garrison had not shown which jurors should have been challenged. *Garrison*, 2018-Ohio-1048, at ¶ 25. The Report recommended deference to this decision and also noted that all peremptory challenges had been used (ECF No. 20, PageID 811, citing Trial Tr., ECF No. 13-1, PageID 606-15).

Garrison objects that there was still an available peremptory challenge to a possible alternate (Objections, ECF No. 21, PageID 840). He again offers no basis for believing any potential alternate not challenged as somehow biased against him.

**Sub-claim Six: Failure to Make Contemporaneous Confrontation Clause Objection**

This claim is dealt with under Ground One.

**Sub-claim Seven: Unnecessarily Extended Cross-Examination of Deputy Hamilton**

In his Seventh Sub-claim, Garrison asserts he received ineffective assistance of trial counsel when his attorney continued to cross-examine Deputy Sheriff Hamilton so as to allow him to testify as to Brian Hohnhold's out-of-court statements (Petition, ECF No. 3, PageID 70). The Fifth District rejected this claim because the extent of cross-examination is treated as a tactical

matter to be decided by counsel in her or his discretion and professional judgment. *Garrison,* 2018-Ohio-1048, at ¶ 27. The Report concluded this Court must defer to the Fifth District because Garrison had cited no United States Supreme Court precedent to the contrary (Report, ECF No. 20, PageID 811 (citations omitted)).

In his Objections, Garrison relies on *Delaware v. Van Arsdall,* 475 U.S. 673 (1986), for the proposition that he had the right to effective cross-examination (ECF No. 21, PageID 841, quoting *Van Arsdall*, 475 U.S. at 682-83). In *Van Arsdall*, the Supreme Court of Delaware had reversed a conviction for trial judge error in restricting a cross-examination for bias. 475 U.S. at 677. The Supreme Court of the United States reversed. It held that preventing counsel from pursuing the particular line of cross-examination he had chosen interfered with the Van Arsdall's Confrontation Clause right. *Id*. at 684.

Nothing in *Van Arsdall* is contrary to the Fifth District's decision here. The decision is about a trial court's limiting an attorney's chosen cross-examination, rather than finding an attorney ineffective for choosing or not choosing a particular line of cross-examination.

**Sub-claim Eight: Failure to Object to Deputy Hamilton's Testimony About Garrison Fleeing the Scene**

In his Eighth Sub-claim, Garrison asserts he received ineffective assistance of trial counsel when his attorney did not object to Deputy Hamilton's testimony that Garrison left the scene of the crime before Hamilton arrived (Petition, ECF No. 3, PageID 70).

On direct appeal, Garrison had claimed there was no evidence to support the claim that he had left the scene when Hamilton arrived. Rejecting that argument, the Fifth District found it was undisputed that Garrison was not at the scene when Hamilton arrived and therefore counsel was

9

not ineffective for failing to object to Hamilton's testimony to that effect. *Garrison*, 2018-Ohio-1048, at ¶¶ 28-29.

In habeas Garrison admitted the Fifth District was correct that it was undisputed he was not there when Hamilton arrived (Traverse, ECF No. 11, PageID 417). However, he contests the suggested inference that his leaving the scene could properly be construed as fleeing with the implication that feeling betokens a guilty conscience. *Id.* The Report concluded that

> [Garrison did not] testify as to what his motive was for leaving. Because fleeing the scene of a crime permits an inference of a guilty conscience, a defendant who does leave the scene and then does not testify leaves a jury free to make that inference. It is not at all clear that an objection by counsel on this issue would have been sustained, rendering this sub-claim unavailing.

(Report, ECF No. 20, PageID 812.)

Garrison objects by drawing the Court's attention to the distinction between leaving and fleeing made in the dictionary (Objections, ECF No. 21, PageID 842, citing DK ADULT, OXFORD AMERICAN DICTIONARY (1st ed. 1998)). The Magistrate Judge agrees that the difference in the two words conveys a distinction between the motives of a person who "leaves" a place and one who "flees" a place. As Garrison himself put it in his Traverse, the difference is in the animus of the person whose motives are in question (Traverse, ECF No. 11, PageID 417). Garrison claims he "simply left the scene without any knowledge that he allegedly committed a criminal offense." *Id.* He says "it is undisputed that [he] was assaulted on scene and merely left to avoid further confrontation with the opposing party." *Id.* But as the Report points out, there is no record evidence to support that claim (ECF No. 20, PageID 812).

Garrison quotes at length from the dissent of Justice Stevens in *Illinois v. Wardlow*, 528 U.S. 119 (2000) (Objs., ECF No. 21, PageID 843-45, quoting *Wardlow*, 528 U.S. at 126-27, 128-36 (Stevens, J., dissenting). In that case the State of Illinois asked the Court to announce a bright

line rule authorizing a stop under *Terry v. Ohio*, 392 U.S. 1 (1968) ("*Terry* stop") of "anyone who flees at the mere sight of a police officer." *Id.* at 127. Stevens describes the different inferences that may be drawn from a person's hurriedly leaving a place:

> The question in this case concerns "the degree of suspicion that attaches to" a person's flight -- or, more precisely, what "commonsense conclusions" can be drawn respecting the motives behind that flight. A pedestrian may break into a run for a variety of reasons -- to catch up with a friend a block or two away, to seek shelter from an impending storm, to arrive at a bus stop before the bus leaves, to get home in time for dinner, to resume jogging after a pause for rest, to avoid contact with a bore or a bully, or simply to answer the call of nature -- any of which might coincide with the arrival of an officer in the vicinity. A pedestrian might also run because he or she has just sighted one or more police officers. In the latter instance, the State properly points out "that the fleeing person may be, *inter alia*, (1) an escapee from jail; (2) wanted on a warrant, (3) in possession of contraband, (i.e. drugs, weapons, stolen goods, etc.); or (4) someone who has just committed another type of crime." Brief for Petitioner 9, n. 4. In short, there are unquestionably circumstances in which a person's flight is suspicious, and undeniably instances in which a person runs for entirely innocent reasons.
>
> Given the diversity and frequency of possible motivations for flight, it would be profoundly unwise to endorse either *per se* rule. The inference we can reasonably draw about the motivation for a person's flight, rather, will depend on a number of different circumstances. Factors such as the time of day, the number of people in the area, the character of the neighborhood, whether the officer was in uniform, the way the runner was dressed, the direction and speed of the flight, and whether the person's behavior was otherwise unusual might be relevant in specific cases. This number of variables is surely sufficient to preclude either a bright-line rule that always justifies, or that never justifies, an investigative stop based on the sole fact that flight began after a police officer appeared nearby.

*Id.* at 128-30.

The same reasoning applies to persons leaving the scene of a crime. They may not have seen anything or, having seen somethings, they may not want to become involved. Justice Stevens

cites a much earlier Supreme Court decision recognizing innocent reasons for leaving the scene of a crime. *Id.* at 131, citing *Alberty v. United States*, 162 U.S. 499 (1896). He concluded that "'[u]nprovoked flight,' in short, describes a category of activity too broad and varied to permit a *per se* reasonable inference regarding the motivation for the activity." *Id.* at 136.

The important part about *Wardlaw* that Garrison misses is that the Supreme Court rejected a *per se* inference about the motivation of flight. It did not hold that any inference from flight would be impermissible, only a *per se* inference. As Justice Stevens notes in *Wardlaw*, the common law has long allowed a permissive inference of consciousness of guilt from leaving the scene following accusation of criminal activity. 528 U.S. at 136 n.13.

Garrison ends by claiming that if his attorney had objected to Hamilton's testimony, "the jury would have immediately known that Garrison did not flee." (Objections, ECF No. 21, PageID 846). Not so. The jury would have known that Garrison, through his counsel, thought this was an important point and when it heard the objection overruled, Hamilton's testimony would have been reinforced.

**Sub-Claim Nine: "Opening the Door" with Deputy Williams**

The Objections do not require further analysis of this sub-claim beyond that given in the Report.

**Sub-claim Ten: Failure to Object to Williams' Testimony About Hohnwald's Statement about Damage to the Door**

The Objections do not require further analysis of this sub-claim beyond that given in the

12

Report.

**Sub-claim Eleven: Failure to Object to the Mischaracterization of Garrison's Actions**

The Objections do not require further analysis of this sub-claim beyond that given in the Report and respecting Sub-claim Eight above.

**Sub-claim Twelve: Failure to Object to the "Fleeing" Instruction**

The Objections do not require further analysis of this sub-claim beyond that given in the Report and respecting Sub-claim Eight above.

**Sub-claim Thirteen: Failure to Seek Instructions on Lesser Included Offenses**

In his Thirteenth Sub-claim, Garrison asserts he received ineffective assistance of trial counsel when his attorney did not seek jury instructions on lesser included offenses (Petition, ECF No. 3, PageID 71). The Fifth District rejected this claim because Garrison had not argued what lesser included offenses would have been proper, given the evidence. *Garrison*, 2018-Ohio-1048, at ¶ 34. Garrison argued in his Traverse that this failure constituted ineffective assistance of appellate counsel (ECF No. 11, PageID 423-24), but the Report noted Garrison had never made such a claim in the Ohio courts, as required by *Edwards v. Carpenter*, 529 U.S. 446 (2000). The Report concluded the Fifth District's decision was not an unreasonable application of *Strickland* and was therefore entitled to deference (ECF No. 20, PageID 815).

Garrison objects that this state of the record somehow leaves the issue of whether to seek lesser included instructions was ineffective assistance of trial counsel open to this Court to decide *de novo* (Objections, ECF No. 21, PageID 849). Not so. That is an issue of federal constitutional law decided by the Fifth District on the merits. *Garrison*, 2018-Ohio-1048, at ¶ 34. That decision controls unless it is an objectively unreasonable application of Supreme Court precedent, which it is not. Just as the Fifth District declined to search the record for possibly proper lesser included offenses, so must this Court.

Garrison's Objections as to the thirteen sub-claims of Ground Two are without merit and should be overruled.

**Ground Three: insufficiency of the Evidence**

In his Third Ground for Relief, Garrison argues his conviction is not supported by sufficient evidence (Petition, ECF No. 3, PageID 73). Applying the doubly-deferential standard that applies to such claims after adoption of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (the "AEDPA"), the Report concluded there was sufficient evidence (ECF No. 20, PageID 816-17, 824).

Garrison objects that "[t]here is a repeated occurrence of Magistrate Judge Merz stating that 'Garrison did not testify at trial and subject his story of what happened to cross-examination.'" (Objections, ECF No. 21, PageID 849, quoting Report, ECF No. 20, PageID 822). He equates this with using his constitutionally privileged refusal to testify as proof of his guilt, *id*. at PageID 849-50, but that is not what has occurred. Rather, repeatedly throughout his pleadings, Garrison has made statements of supposed fact from his point of view, but they are not based on testimony

either he or anyone else made at trial. In considering a habeas corpus petition, a federal district court is confined to the record made in the state trial court. That record cannot be added to even by sworn testimony in federal court, much less by bald assertions of fact in unverified pleadings. *Cullen v. Pinholster*, 563 U.S. 170 (2011). By not testifying, Garrison lost his opportunity to place his version of the facts before the jury. The Court does not infer his guilt from this, but notes that the facts Garrison could have contradicted at trial are uncontradicted on the record.

In his Objections, the supposedly unproven element on which Garrison focuses on is the element of aggravated burglary under Ohio Revised Code § 2911.11(A)(1) that "[t]he offender inflicts, or attempts or threatens to inflict physical harm on another[.]" (Objections, ECF No. 21, PageID 851 (brackets in original)). Garrison claims that because he was acquitted on the domestic violence charge, this element could not have been proven beyond a reasonable doubt. *Id*. at PageID 852. Not so. Rather, the Fifth District found there was sufficient evidence to convict Garrison of actually inflicting physical harm on Nikki Dickinson and intending to commit a criminal offense with respect to Ryan Wilt. *Garrison*, 2018-Ohio-1048, at ¶¶ 40, 43.

Garrison argues in his Objections (ECF No. 21, PageID 853) that the Fifth District's application of the statutory term "family member" to Nikki Dickinson is inconsistent between this case and that court's prior decision affirming his conviction for domestic violence on Ms. Dickinson. The record that was before that court in the earlier case is not part of the record in this case and the evidence presented on this issue may well have been different.

**Ground Four: Improper Imposition of Maximum Sentence**

In his Fourth Ground for Relief, Garrison claims the trial court violated the Sixth

Amendment when it sentenced him to the maximum possible sentence of eleven years on the aggravated burglary conviction after considering conduct on which he was acquitted (Petition, ECF No. 3, PageID 77).

Garrison claimed error in sentencing before the Fifth District purely as an abuse of discretion and thus did not fairly present it as a federal constitutional claim. *Garrison*, 2018-Ohio-1048, at ¶ 54. When he appealed to the Supreme Court of Ohio, he changed grounds and made a Double Jeopardy argument. The Report upheld Respondent's lack of fair presentation/procedural default defense because raising a claim for the first time on appeal to the Supreme Court of Ohio does not cure a procedural default in presenting it earlier (Report, ECF No. 20, PageID 824-25.) The Report also rejects Garrison's Double Jeopardy claim on the merits. *Id.* at PageID 826-27.

Garrison's Objections are completely conclusory (ECF No. 21, PageID 853-54). When a judge chooses a sentence within the sentencing range for an offense of conviction, the Double Jeopardy Clause does not preclude the judge from considering all the facts and circumstances of the crime, even though a defendant may have been acquitted on some associated charges. Garrison cites no precedent to the contrary.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again recommends that it be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

July 15, 2019.

s/ *Michael R. Merz*<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).